David M. Berger (SBN 277526)
Aaron Blumenthal (SBN 310605)
Kate Walford (SBN 362658)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Fax: (510) 350-9701
dmb@classlawgroup.com
ab@classlawgroup.com
kgw@classlawgroup.com

Renner K. Walker (SBN 295889)
Steven M. Nathan (SBN 153250)
Gisela (Zelly) Rosa*
Jacob R Leiken*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
rwalker@hausfeld.com
snathan@hausfeld.com
zrosa@hausfeld.com
jleiken@hausfeld.com

**pro hac vice forthcoming*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RYAN SCOTT MUN and FELIX PHAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>AXON ENTERPRISE, INC.,<br><br>Defendant. | Case No.: 3:26-cv-13127<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**NATURE OF THE CASE** .......... **2**

**PARTIES** .......... **5**

**JURISDICTION AND VENUE** .......... **5**

**DIVISIONAL ASSIGNMENT** .......... **6**

**FACTUAL ALLEGATIONS** .......... **6**

I. ALPR Cameras and California's ALPR Privacy Act .......... 6

II. Axon's ALPR Cameras and Software Amass, Analyze, and Interpret Massive Amounts of Data, Creating Detailed Vehicle Profiles and Histories .......... 10

III. Axon Uses ALPR Data to Develop and Improve its Products .......... 14

IV. Axon ALPR Cameras in California .......... 16

V. Axon Violates California Law by Failing to Implement a Usage & Privacy Policy .......... 17

VI. Axon's ALPR Data Collection and Aggregation Practices are Highly Offensive .......... 21

**PLAINTIFFS' EXPERIENCES** .......... **26**

I. Plaintiff Mun's Experience .......... 26

II. Plaintiff Phan's Experience .......... 27

**CLASS ACTION ALLEGATIONS** .......... **28**

COUNT I: VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT: FAILURE TO IMPLEMENT A USAGE AND PRIVACY POLICY .......... 32

COUNT II: INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION .......... 34

COUNT III: INTRUSION UPON SECLUSION (ON BEHALF OF PLAINTIFFS AND THE CLASS) .......... **36**

**PRAYER FOR RELIEF** .......... **38**

**DEMAND FOR JURY TRIAL** .......... **39**

Throughout California and the United States, drivers are tracked by a network of automated license plate recognition ("ALPR") cameras and software—tens of thousands of high-definition cameras combined with artificial intelligence ("AI") and sophisticated communications networks. While other cameras used by law enforcement activate only upon detecting a violation—a vehicle running a red light, for example—these ALPR cameras record information on every passing vehicle, forming a vast, interconnected surveillance dragnet. Defendant Axon Enterprise, Inc. ("Axon") owns and operates a total ecosystem of cameras, including fleets of roving police-cruiser mounted cameras and fixed surveillance cameras, oversees the processing and storage of the images and data points they capture, and controls the software and AI architecture that facilitates this surveillance. Axon further integrates ALPR data with data from its other products, including body cameras and drones.

The California Legislature has recognized the serious threat to privacy rights and civil liberties posed by Axon's mass surveillance. In 2015, California enacted Senate Bill 34 (the "ALPR Privacy Act"), which outlines how companies like Axon may legally capture, use, store, and share ALPR data. For example, Axon and other ALPR operators are required to implement a conspicuously posted usage and privacy policy informing the public of how they use and share ALPR data. The Act grants individuals the right to know which entities are collecting their ALPR data and how it is being used and maintained.

Axon has blatantly violated these rules, failing to provide the statutorily required privacy policy that would actually tell Californians how Axon uses their ALPR information. Axon collects California drivers' vehicle and location information and does not tell them what it does with it. California drivers are unable to determine who can see their data, how long it is kept, whether it is shared and with whom, and how incorrect data can be fixed. By collecting and maintaining individuals' ALPR information without implementing and making public the statutorily required policy, Axon harms these individuals by violating this right to know.

Worse, Axon combines and preserves ALPR information from a variety of sources in its Axon Evidence and Fusus software where it can be queried by customers without a warrant, violating Californians' constitutionally protected privacy. Axon could implement policies and

design its system in compliance with the ALPR Privacy Act and Californians' privacy rights; indeed, it is legally required to do so. But Axon has chosen to flout California law.

Plaintiffs Ryan Scott Mun and Felix Phan bring this Class Action Complaint against Axon individually and on behalf of all others similarly situated, and allege upon personal knowledge and their counsel's investigations as follows:

## NATURE OF THE CASE

1. Axon has created a mass-surveillance infrastructure that is practically impossible to avoid, particularly for anyone driving anywhere in the country where Axon has installed its ALPR cameras. Even if an individual were to successfully avoid Axon's fixed ALPR cameras, Axon also provides mobile police-cruiser mounted ALPR cameras that indiscriminately capture drivers' information in the same manner.

2. Axon offers both fixed and mobile ALPR cameras. Its fixed cameras are installed in high-traffic locations that scan each and every vehicle that passes by, collecting the license plate number, location, time, and vehicle characteristics such as color, make, and body.[1] Axon mobile cameras are deployed inside law enforcement patrol vehicles, and automatically and indiscriminately collect the same information by scanning all vehicles which pass in front of or adjacent to the patrol car whenever the vehicle is turned on.[2]

3. Axon has been selling mobile ALPR cameras to law enforcement since 2021 and introduced fixed ALPR cameras in 2025—around the time that scrutiny over other ALPR operators, such as Flock Safety, was growing.[3]

---

[1] *More than just plate reads: vehicle intelligence from Axon is here*, Axon [hereinafter Axon, *More than just plate reads*], https://www.axon.com/resources/vehicle-intelligence-axon (last visited Nov. 3, 2026).

[2] *FAQs: How does ALPR work in Fleet 3?*, Axon [hereinafter Axon, *Fleet 3 FAQs*], https://www.axon.com/help/fleet-3/cameras-and-sensors/fleet/3/alpr/faq-alpr.htm (last visited Nov. 3, 2026).; *ALPR introduction: Search in Axon Evidence*, Axon [hereinafter Axon, *Search in Axon Evidence*], https://www.axon.com/help/fleet-3/cameras-and-sensors/fleet/3/alpr/alpr-search-evidence.htm (last visited Nov. 3, 2026).

[3] Jay Stanley, *Beware of Other License Plate Surveillance Companies Besides Flock*, ACLU (Aug. 25, 2026), https://www.aclu.org/news/privacy-technology/tracking-alpr-cameras/other-alpr-vendors.

4. Axon aggregates the ALPR information it collects with data from other sources in databases accessible through its “Fusus” and “Evidence” software, which offer law enforcement agencies a single, real-time view of every data source they can integrate.[4] This includes Axon’s own ALPR cameras as well as private cameras in a law enforcement agency’s jurisdiction, Axon’s drones, Axon’s in-cruiser mounted computers, Axon’s TASER weapons, and more.[5]

5. Axon’s law enforcement customers can also choose to share their ALPR information with other law enforcement agencies. This information can also be queried through Axon Fusus.

6. Axon manufactures, owns, and operates the ALPR cameras, and creates, maintains, and controls the data storage, web interfaces, and applications that enable its customers to access and analyze ALPR data gathered by other customers.

7. Axon operates ALPR systems nationwide, including in California. The police departments of at least Los Angeles, Fremont, and Sacramento utilize Axon’s in-car ALPR cameras.[6] Numerous fixed Axon ALPR cameras appear in areas such as Beverly Hills, Burbank, Palm Desert, Daly City, UCLA, and California State University, Long Beach.[7]

8. While the California Legislature recognizes the benefits ALPR technology can provide to law enforcement agencies, it also recognizes that ALPR technology can invade

---

[4] *Axon Fusus*, Axon [hereinafter Axon Fusus Product Page], https://www.axon.com/products/axon-fusus (last visited Nov. 3, 2026); *Axon Evidence*, Axon, https://www.axon.com/products/axon-evidence (last visited Nov. 3, 2026).

[5] *Axon Fusus*, *supra* note 4.

[6] Matthew Barragan, L.A. Police Comm’n, *Review of the Department’s ALPR System and Use in the Field* 4–5, 8 (2026), https://www.lapdpolicecom.lacity.org/071426/BPC_26-184x.pdf; *Citywide Community Camera Project Including Automatic License Plate Readers (ALPRs)*, Fremont Police Dep’t [hereinafter Fremont PD, *Community Camera Project*], https://www.fremontpolice.gov/crime-prevention/video-surveillance-cameras/community-camera-project-and-alprs (last visited Nov. 3, 2026); Jennah Pendleton, *Does Sacramento have license plate reading tech? What it uses instead of Flock*, The Bee (Aug. 16, 2026), https://www.sacbee.com/news/local/article316841967.html (last updated Aug. 21, 2026).

[7] DeFlock Maps, https://maps.deflock.org/?lat=33.8248&lng=-117.4848&zoom=8.28 (last visited Nov. 3, 2026); City of Daly City, Approved Minutes, Regular Meeting of the City Council, Agenda Item 12, Resolution 26-108 (June 8, 2026), *reprinted in* City of Daly City, City Council Agenda Packet (June 22, 2026), https://dalycityca.api.civicclerk.com/v1/Meetings/GetMeetingFileStream(fileId=5410,plainText=false).

personal privacy and harm civil liberties.

9. California's ALPR Privacy Act[8] sets legal requirements for both ALPR end-users—those who access ALPR data—and ALPR operators—those who operate ALPR systems. The ALPR Privacy Act requires Axon, as both an operator and an end-user, to implement and make conspicuous on its website an ALPR usage and privacy policy containing specific provisions, including stating the authorized purposes for using the ALPR information the system collects. The ALPR Privacy Act also requires Axon to ensure its California customers use ALPR information only for authorized purposes. Axon has blatantly violated these requirements for the California entities using its products and services by failing to have any such policy.

10. In the wake of local and national controversy surrounding ALPR usage, Axon has attempted to market itself as an alternative to the popular Flock ALPR system[9] as agencies look to switch ALPR operators. Despite marketing itself as an ethical alternative to other disgraced operators, Axon fails to meet even the minimum standards set by the ALPR Privacy Act: to have a usage and privacy policy and to adhere to it.

11. Rather than implementing and publicly posting a usage and privacy policy, Axon hides behind allowing its customers to "selectively publish" their own ALPR policy and usage information on a webpage.[10] But Axon, as an operator and end-user itself, is required to implement its own policy to safeguard the privacy and rights of California drivers.

12. This violates Californians' right to know which entities are collecting their ALPR data and how it is being used and maintained. Axon's failure leaves Plaintiffs and the public unable to know how their data is captured, stored, shared, or sold through Axon, and makes it conveniently impossible to hold Axon accountable: it can't be held to a standard it does not have.

---

[8] Throughout this Complaint, "the ALPR Privacy Act" will refer to the laws codified in Cal. Civ. Code §§ 1798.90.5 *et seq*.

[9] Stanley, *supra* note 3 (citing Product School, *Axon CPTO on How Law Enforcement Uses AI to Save Lives, Not Just Hit Metrics*, at 23:42 (YouTube, July 8, 2026)).

[10] *ALPR introduction: Public policy and usage*, Axon [hereinafter Axon, *Public policy and usage*], https://www.axon.com/help/fleet-3/cameras-and-sensors/fleet/3/alpr/admin-alpr-policy.htm#Publicpolicyandusage (last visited Nov. 3, 2026) [https://perma.cc/9GVX-TRDE].

13. Uproar around ALPR cameras in the past year has demonstrated that people and communities in the United States are not only interested in but highly concerned about the use of and access to their ALPR data.[11]

14. Axon's state-wide and nationwide ALPR system also violates Californians' right to privacy under the California Constitution.

## PARTIES

15. Plaintiff Ryan Scott Mun is a natural person and a citizen of the State of California. Plaintiff Mun resides in Daly City in San Mateo County, California.

16. Plaintiff Felix Phan is a natural person and a citizen of the State of California. Plaintiff Phan resides in Palm Desert in Riverside County, California.

17. Defendant Axon Enterprise, Inc. ("Axon") is a corporation formed under the laws of Delaware. It is headquartered at 17800 N 85th Street in Scottsdale, Arizona 85255.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this controversy under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs, there are over 100 proposed Class Members, and Plaintiffs, citizens of California, are citizens of a different state than Axon.

19. This Court has personal jurisdiction over Axon because Plaintiffs' claims arise out of and relate to Axon's conduct within California. Axon markets and sells its ALPR products to California customers, including California law enforcement agencies. Axon has numerous contracts with California law enforcement agencies, such as Antioch, Hayward, Los Angeles, Fremont, and Sacramento, and has well over a thousand cameras located in California, which it

---

[11] Cesareo Contreras, *What's behind the Flock camera controversy?*, Ne. Glob. News (Aug. 31, 2026), https://news.northeastern.edu/2026/08/31/flock-camera-controversy/; Selen Ozturk, *The Flock Backlash and Growing Revolt Against License Plate Surveillance* (Sep. 17, 2026), https://americancommunitymedia.org/immigration/the-flock-backlash-and-growing-revolt-against-license-plate-surveillance/; Drew Harwell et al., *Americans have turned against police cameras that track license plates, new survey shows*, Wash. Post (Aug. 28, 2026), https://www.washingtonpost.com/technology/2026/08/28/americans-turn-against-license-plate-readers-privacy-concerns-grow/.

uses to take license plate scans of California vehicles. Axon, therefore, has sufficient minimum contacts such that exercising personal jurisdiction over it comports with traditional notions of fair play and substantial justice. Plaintiffs' claims arise out of and relate to Axon's California contacts.

20. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in, were directed to, and/or emanated from this District.

## DIVISIONAL ASSIGNMENT

21. A substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in San Mateo County. Plaintiff Mun resides in Daly City in San Mateo County, drives there daily, and was injured there as a result of Axon's unlawful conduct. Accordingly, under Local Rule 3-2, this matter should be assigned to the San Francisco Division.

## FACTUAL ALLEGATIONS

### I. ALPR Cameras and California's ALPR Privacy Act

22. Modern ALPR technology uses specialized cameras and software to automatically scan, record, and convert vehicle license plates into digital data.[12] These systems are typically mounted onto local infrastructure or on law enforcement patrol cars and scan the license plate of every passing vehicle. While each camera captures one point in time, the data from each camera is merged to track and map a vehicle's movements across entire regions at all hours of the day, every day of the year. The ALPR cameras capture images of license plates, using AI and Optical Character Recognition (OCR) to convert the images into machine-readable text in real time.

23. In 2015, the California Legislature enacted the ALPR Privacy Act to mitigate ALPR systems' risks to privacy and initiated strict requirements on operators and end-users of ALPR surveillance. Legislative history notes that by aggregating license plate numbers with

---

[12] ALPR camera technology is distinguishable from a standard traffic camera. Traffic cameras only record specific violations at a single point in time, such as speeding on a stretch of road or running a red light at an intersection. In contrast, ALPRs are always recording, documenting, and uploading information into a centralized data store. Thus, ALPRs capture all vehicles that pass by ALPR cameras through a city or region. *See* Mario Lotmore, *Somebody's watching me: Flock versus red light cameras in Lynnwood*, Lynnwood Times (Nov. 10, 2025), https://lynnwoodtimes.com/2025/11/10/red-light.

specific locations and timestamps, operators can reconstruct a person's exact location and day-to-day patterns:

> The collection of a license plate number, location, and time stamp over multiple time points can identify not only a person's exact whereabouts but also their pattern of movement. Unlike other types of personal information that are covered by existing law, civilians are not always aware when their ALPR data is being collected. One does not even need to be driving to be subject to ALPR technology: A car parked on the side of the road can be scanned by an ALPR system. This bill will put in place minimal privacy protections by requiring the establishment of privacy and usage protection policies for ALPR operators and end-users.[13]

24. Cal. Civ. Code § 1798.90.5(d) defines an "ALPR system" as a "searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data."

25. Axon's systems that collect and store ALPR information, including the Axon Evidence and Fusus platforms, are "ALPR Systems." Axon uses AI models to "process raw video frames, detect a license plate, identify characters on the plate and output a string of plate characters."[14] This data is automatically stored on Axon's cloud servers and searchable by customers through the Axon Evidence and Fusus platforms.[15]

26. Cal. Civ. Code § 1798.90.5(c) defines an "ALPR operator" as "a person that operates an ALPR system, but does not include . . . a transportation agency when subject to Section 31490 of the Streets and Highways Code." Axon is an ALPR operator because it operates its own ALPR systems and is not a transportation agency subject to Section 31490 of the Streets and Highways Code.

27. Cal. Civ. Code § 1798.90.5(a) defines an "ALPR end-user" as "a person that accesses or uses an ALPR system." Axon is an ALPR end-user because it accesses the ALPR

---

[13] S. Comm. on Transp. & Hous., Bill Analysis, S.B. 34, ¶ 3 (2015).
[14] *How Axon is using AI responsibly to transform public safety*, Axon, https://www.axon.com/resources/how-axon-is-using-ai-responsibly (last visited Nov. 3, 2026)
[15] *Fusus ALPR Experience: ALPR Search*, Axon [hereinafter Axon, *Fusus ALPR Search*], https://www.axon.com/help/fusus/software/fusus/alpr/alpr-search-interface.htm (last visited Nov. 3, 2026).

system for at least the following purposes: to perform troubleshooting, maintenance, or diagnostic screenings; and to enforce its agreements with customers, and to provide, develop, improve, and support current and future Axon products.[16]

28. Axon's customers, including law enforcement agencies, are also ALPR end-users because they access the ALPR data stored in Axon's ALPR system.

29. The ALPR Privacy Act mandates that *both* operators and end-users and customers adhere to several fundamental requirements:[17]

a. **The Security Requirement:** Both ALPR operators and end-users must "maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.90.51(a); *id.* § 1798.90.53(a).

b. **The Privacy Requirement:** Both ALPR operators and end-users must "implement a usage and privacy policy in order to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties." *Id.* § 1798.90.51(b)(1); *id.* § 1798.90.53(b)(1).

c. **The Notice Requirement:** Both ALPR operators and end-users must post the usage and privacy policy "conspicuously" on their website and include the following information:

(A) The authorized purposes for using the ALPR system and collecting ALPR information.

(B) A description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR

[16] Axon Enterprise, Inc., *Master Services and Purchasing Agreement for Consumer* 6 (2024), https://mccmeetingspublic.blob.core.usgovcloudapi.net/forestpark-meet-5ca11f1e4f044d458ffa2432f5777478/ITEM-Attachment-001-472bf5be78ab429cae83004b12c43c36.pdf.

[17] Cal. Civ. Code §§ 1798.90.51, 1798.90.53.

system, or to collect ALPR information. The policy shall identify the training requirements necessary for those authorized employees and independent contractors.

(C) A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws.

(D) The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.

(E) The title of the official custodian, or owner, of the ALPR system responsible for implementing this section.

(F) A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.

(G) The length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information.

*Id.* §§ 1798.90.51(b), 1798.90.53(b).

30. Crucially, ALPR operators like Axon must also comply with two additional requirements to ensure consumer privacy and protect against unauthorized access:

a. **The Audit Requirement.** California's ALPR statute provides that any time an ALPR operator "provides access to ALPR information" in its systems (whether access is by the operator itself, its employees, or an end-user), the ALPR operator must "[m]aintain a record of that access." *Id.* § 1798.90.52(a). The statute provides a non-exhaustive list of what is required to maintain adequate ALPR access records. An ALPR access record will be automatically deemed non-compliant if it fails to include (1) "[t]he date and time the information is accessed"; (2) the search term used to query the system to return the ALPR information (such as license plate number or vehicle description); (3) who accessed the ALPR information and their entity affiliation; and (4) "[t]he purpose for accessing the information." *Id.* § 1798.90.52(a).

b. **The Proper Use Requirement.** ALPR operators must also "require that ALPR information only be used for the authorized purposes described in the usage and privacy policy . . . ." *Id.* §1798.90.52(b).

31. In 2023 guidance, the California AG clarified that, under the ALPR Privacy Act, "ALPR operators [like Axon] . . . must develop a usage and privacy policy, which must be conspicuously posted on their website, and must contain provisions designed to 'protect ALPR information from unauthorized access, destruction, use, modification, or disclosure.'"[18]

32. An individual harmed by a violation of the ALPR Privacy Act—"including, but not limited to, unauthorized access or use of ALPR information or a breach of security of an ALPR system"—may bring a civil suit "against a person who knowingly caused the harm" and recover (1) actual damages, but not less than liquidated damages in the amount of $2,500, (2) punitive damages upon proof of willful or reckless disregard of the law, (3) reasonable attorney's fees and other litigation costs reasonably incurred, and (4) other preliminary and equitable relief as the court determines to be appropriate. *Id.* § 1798.90.54.

33. Here, Axon has knowingly been in violation of the ALPR Privacy Act by collecting and using ALPR data without implementing the statutorily required policy governing said use and collection.

## II. <u>Axon's ALPR Cameras and Software Amass, Analyze, and Interpret Massive Amounts of Data, Creating Detailed Vehicle Profiles and Histories</u>

34. In the decade since the ALPR Privacy Act was enacted, ALPR camera technology has become more sophisticated, as have the software and algorithms that companies like Axon use to analyze and organize that data. One of the primary shifts between historical and modern ALPR technology is the transition from merely capturing static images of license plates to conducting real-time analysis and extensive tracking of license plates and vehicles.

---

[18] Div. of L. Enf't, Cal. Dep't of Just., California Automated License Plate Reader Data Guidance, Info. Bull. No. 2023-DLE-06, at 2 (Oct. 27, 2023), https://oag.ca.gov/system/files/media/2023-dle-06.pdf.

35. ALPR cameras, including Axon's, "automatically capture all license plate numbers that come into view, along with the location, date, and time."[19]

36. Axon's ALPR surveillance occurs almost exclusively without drivers' knowledge because it targets both active drivers and stationary vehicles parked on public streets and in view of Axon's technology.

37. Axon captures vehicle data and identifies automobiles through an integrated system of hardware, artificial intelligence, and cloud computing that goes far beyond just collecting license plates.

38. Advancements in camera technology have allowed for the widespread proliferation of ALPR cameras, including those fixed inside moving police vehicles. There are now thousands of Axon ALPR cameras in California and hundreds of thousands of ALPR cameras from all manufacturers.

39. Axon offers several ALPR camera models. Axon Outpost is a rugged model designed to be mounted on dedicated poles.[20] In addition to being an ALPR camera, it can livestream footage to Axon Fusus and identify vehicles based on their physical attributes. Axon Lightpost has a similar set of features but is designed to mount on existing streetlights.[21] This makes the camera harder to detect and visually distinct from Axon's ALPR system competitors. Axon Fleet 3 is a police-cruiser mounted ALPR camera.[22] It also records video inside and outside the vehicle.

---

[19] Electronic Frontier Foundation, *Automated License Plate Readers*, SURVEILLANCE SELF-DEFENSE, https://sls.eff.org/technologies/automated-license-plate-readers-alprs (last visited Nov. 3, 2026).

[20] *Axon Outpost*, Axon [hereinafter Axon Outpost Product Page], https://www.axon.com/products/axon-outpost (last visited Nov. 3, 2026).

[21] *Axon Lightpost*, Axon, https://www.axon.com/products/axon-lightpost (last visited Nov. 3, 2026).

[22] *Axon Fleet 3*, Axon, https://www.axon.com/products/axon-fleet-3 (last visited Nov. 3, 2026).

***Axon Camera Offerings***[23]



**Axon Outpost**



**Axon Lightpost**



**Axon Fleet 3**

40. Axon ALPR cameras capture photos of passing vehicles, along with date, time, a read confidence score, and GPS location.[24] Axon uses OCR software to isolate vehicle license plates from the images and converts them into machine-readable text, i.e., the plate number. Axon uses AI to process this data and "establish a range of attributes including vehicle color, make, and type."[25]

41. Axon's cameras capture millions of plate reads. For example, according to a response to a recent public records request, the Fremont Police Department's mobile Axon ALPR cameras captured nearly 5 million plate reads over a 90-day period.

42. Some police departments are trained to "grid" neighborhoods using mobile ALPR to scan every plate on every street, even where there is no suspicion of any crime.[26]

---

[23] *Product Catalog: Cameras & sensors*, Axon, https://www.axon.com/products#cameras-sensors (last visited Nov. 3, 2026).

[24] Axon, *Fleet 3 FAQs*, *supra* note 2.

[25] *Id.*

[26] Yael Grauer, *Arizona police agencies gather & share license plate data, but few ensure rules are being followed*, Ariz. Mirror (July 8, 2019), https://azmirror.com/2019/07/08/arizona-police-agencies-gather-share-license-plate-data-but-few-ensure-rules-are-being-followed/.

43. Axon transmits these images and extracted information to its cloud servers. Once in the cloud, Axon then cross-checks the plate number against law enforcement databases to "broker the match"[27] of license plates and feeds the ALPR data into a myriad of algorithms and tools to provide its customers with an ever-growing trove of information.[28]

44. Axon's ALPR cameras automatically store this ALPR data in databases accessible by customers in its Axon Evidence or Fusus platform, through which Axon's customers can query ALPR data.[29]

45. Axon allows its customers to search for vehicles using not just license plate numbers, but also physical attributes including "partial identifiers," across all ALPR cameras and other cameras connected to a law enforcement agency's Axon Fusus instance.[30] This includes make, color, and body. Axon's powerful tools allow its customers to search for cars using these granular details, and customers can further narrow the search geographically using any user-defined limitations.[31]

46. Axon's Fusus search can even integrate with privately owned Ring doorbell cameras, expanding a law enforcement agency's data acquisition beyond the cameras it installs.[32]

47. Axon's cameras and software don't just capture license plates and vehicle characteristics; they also identify people. Axon's Fusus product can "[u]se AI-powered tools to detect people, vehicles, and objects in historical footage and generate clips for review." This

---

[27] *Fusus ALPR Experience: ALPR Sharing*, Axon, https://www.axon.com/help/fusus/software/fusus/alpr/alpr-sharing.htm (last visited Nov. 3, 2026).

[28] *ALPR introduction: Hotlists*, Axon, https://www.axon.com/help/fleet-3/cameras-and-sensors/fleet/3/alpr/alpr-hotlists.htm (last visited Nov. 3, 2026); Axon, *Search in Axon Evidence*, *supra* note 2.

[29] Axon, *Fusus ALPR Search*, *supra* note 15; Axon, *Fleet 3 FAQs*, *supra* note 2; Axon, *Search in Axon Evidence*, *supra* note 2.

[30] Axon, *More than just plate reads*, *supra* note 1.

[31] Axon, *Fusus ALPR Search*, *supra* note 15.

[32] Press Release, Axon, Axon Announces New Fixed ALPR Camera Solutions and Next-Gen AI Advancements to Expand Real-Time Public Safety Ecosystem (Apr. 22, 2025), https://www.axon.com/newsroom/press-releases/axon-announces-new-fixed-ALPR-camera-solutions-and-next-gen-AI-advancements-to-expand-real-time-public-safety-ecosystem.

includes characteristics like clothing color.[33]

48. Axon also allows its customers to create "Sentries," which it calls "virtual monitoring agents." Sentries search across an agency's connected cameras in real-time across similarly flexible criteria. Sentries can even search for individuals based on a variety of characteristics, including vehicles and people.[34] Like the rest of Axon's searches, these can be created without a warrant.

49. Finally, Axon allows its customers to share their data with other law enforcement agencies.[35] This includes cross-jurisdictional sharing. An "Axon Week" session in 2025 discussed "how agencies will benefit from the trove of data funneled into the system from devices throughout a jurisdiction, and even between jurisdictions across the state or even the country."[36]

50. From a single set of vehicle images, Axon thus creates detailed, searchable, and dangerously actionable data records that extend far beyond just a license plate number.

## III. Axon Uses ALPR Data to Develop and Improve its Products

51. Axon accesses and uses its customers' ALPR data for a variety of purposes, none of which it discloses in its non-existent ALPR usage and privacy policy. As both an operator of the ALPR system and an end-user of this data, Axon is required by the ALPR Privacy Act to disclose these uses. And without this policy, none of these uses are authorized. *See* Cal. Civ. Code §§ 1798.90.51(b)(2)(A); 1798.90.53(b)(2)(A).

52. First, Axon itself can access the ALPR data collected on behalf of its customers for support requests, as well as to perform troubleshooting, maintenance, or diagnostic screenings and to enforce its agreements with customers.[37]

---

[33] *Software: AI search & detection*, Axon, https://www.axon.com/help/fusus/software/fusus/ai-search.htm (last visited Nov. 3, 2026).

[34] *Id.*

[35] Axon, *Fusus ALPR Search*, *supra* note 15.

[36] Paul Peluso, *Increasing Officer Situational Awareness Through Vehicle Intelligence*, Officer.com (June 25, 2025), https://www.officer.com/vehicles-fleet/article/55291628/increasing-situational-awareness-through-vehicle-intelligence.

[37] Letter from Isaiah Fields, Chief Legal Officer, Axon, to Legis. Rsch. Comm'n, Ky. Gen. Assembly (Sept. 1, 2026), https://apps.legislature.ky.gov/CommitteeDocuments/8/44416/5.%20Automatic%20License%20Plate%20Readers%20%28Axon%20Statement%29.pdf (Axon

53. In addition, Axon runs a Customer Experience Improvement Program ("ACEIP") which allows Axon to use data collected for customers to "develop, improve, and support current and future Axon products."[38] Under ACEIP Basic, Axon uses Customer Content (defined as "all data, files, and content uploaded into, ingested by, created in, or generated through Customer's use of Axon Cloud Services within Customer's tenant") to "[a]pply privacy-preserving transformations that remove identifying information appropriate to the use case" to create what it calls "Transformed Content."[39]

54. Axon's current Master Services and Purchasing Agreement states that "Unless otherwise agreed to in writing, Axon and Axon's subprocessors will not train their models on Customer Content."[40] However, the agreement also includes an ACEIP appendix, which states that customers are automatically enrolled as participants in the ACEIP Basic program unless they revoke consent—meaning that Axon will indeed use Customer Content.[41] If a customer does so, Axon will then "endeavor[] to implement the op-out [sic] within 15 calendar days" but will "retain Transformed Content created before it implemented the opt-out request."[42] A prior version of Axon's Master Services and Purchasing Agreement, released on October 31, 2023, automatically enrolled customers in a similar "Tier 1" ACEIP program. A customer could revoke this permission and Axon would stop accessing the agency's content within 30 days and would "delete any and all ACEIP content."[43]

55. This same prior version provides an example of ALPR data being used in the ACEIP program, stating "when extracting license plate data to improve Automated License Plate Recognition (ALPR) capabilities, individual license plate characters would be extracted and

---

statement to Kentucky General Assembly Information Technology Oversight Committee regarding the use of ALPR technology).

[38] Axon, *Master Services & Purchasing Agreement* 17 (2026), https://a.storyblok.com/f/198504/x/e9c5ffd778/mspa_v1-0.pdf

[39] *Id.*

[40] *Id.* at 16.

[41] *Id.* at 17.

[42] *Id.*

[43] Axon, *Master Services and Purchasing Agreement for Agency* 8 (2023), https://www.minotnd.gov/AgendaCenter/ViewFile/Item/7275?fileID=22275.

disassociated from each other so a complete plate could not be reconstituted, and all association to other elements of the source video, such as the vehicle, location, time, and the surrounding environment would also be removed."[44] This example does not exist in Axon's current Master Services and Purchasing Agreement.

## IV. Axon ALPR Cameras in California

56. Axon ALPR cameras exercise a wide reach in California, especially through Axon Fleet in-police-car cameras. For example, over 1,600 Los Angeles Police Department vehicles are equipped with Axon Fleet cameras.[45]

57. Fixed Axon ALPR cameras are installed in numerous areas in California, including Beverly Hills, Burbank, Palm Desert, UCLA, California State University Long Beach,[46] Antioch, Daly City, and Hayward.[47]

58. Cities in California using Axon's mobile ALPR cameras in patrol vehicles include Antioch, Alameda, Hayward, Los Angeles, Fremont, and Sacramento.[48]

---

[44] *Id.*

[45] Memorandum from Matthew W. Szabo, City Admin. Officer, City of Los Angeles, to Budget & Fin. Comm., City of Los Angeles (May 7, 2026),https://ens.lacity.org/cao/cao_budget_memo/caocao_budget_memo2925197132_05072026.pdf.

[46] DeFlock Maps, *supra* note 7.

[47] *Antioch Begins Move Away from Flock Cameras, Axon Deal Approved*, Contra Costa News (Aug. 27, 2026), https://contracosta.news/2026/08/27/antioch-begins-move-away-from-flock-cameras-axon-deal-approved/; City of Daly City, Approved Minutes, Regular Meeting of the City Council, Agenda Item 12, Resolution 26-108 (June 8, 2026), *reprinted in* City of Daly City, City Council Agenda Packet (June 22, 2026), https://dalycityca.api.civicclerk.com/v1/Meetings/GetMeetingFileStream(fileId=5410,plainText=false); City of Hayward, Meeting Detail, Meeting of the City Council, Agenda Item 21, File No. LB 22-018 [hereinafter Hayward City Council July 5, 2022, Meeting Minutes] (July 5, 2022), https://hayward.legistar.com/MeetingDetail.aspx?ID=984055&GUID=9012B38D-23E9-440B-BC47-106F185E4401&Options=&Search=.

[48] *Antioch Police Set to Upgrade Camera Technology*, Contra Costa News (Aug. 25, 2025), https://contracosta.news/2025/08/25/antioch-police-set-to-upgrade-camera-technology/; Memorandum from Spencer Mountain, Lieutenant, Bureau of Pro. Standards, City of Alameda, to Nishant Joshi, Chief of Police, City of Alameda (Mar. 5, 2025), https://alameda.legistar.com/View.ashx?M=F&ID=14000556&GUID=AC18E915-3465-4327-9155-30F986FF5F72; Hayward City Council July 5, 2022, Meeting Minutes, *supra* note 47; *The Los Angeles Police Department Announced That It Will Deploy Axon Fleet 3 In-Car Camera Systems. NA23053ti*, LAPD Newsroom (May 2, 2023), https://www.lapdonline.org/newsroom/the-los-

59. In addition, Axon's Fusus platform integrates data from its own ALPR cameras with privately owned cameras and data from other sources.[49] Thus, the data it collects, and therefore the information it compiles on Californians, is not bound by the cameras its clients install.

60. Axon's vast array of cameras enables its customers to track a vehicle across multiple locations, revealing "sensitive details about where individuals work, live, associate, worship, seek medical care, and travel."[50] Bypassing warrants and laws designed to protect personal liberties, Axon's ALPR system tracks, catalogues, and analyzes every turn of every driver's route, looking for "suspicious activity" to generate new business—not safer communities. The ACLU has described similar features offered by ALPR vendors as "variants on the same theme: using the camera network not just to investigate based on suspicion, but to generate suspicion itself."[51]

61. While law enforcement may appreciate that Axon makes their jobs easier, convenience to police does not justify the increasingly invasive and pervasive surveillance and profiling of innocent Californians.

## V. <u>Axon Violates California Law by Failing to Implement a Usage & Privacy Policy</u>

62. The ALPR Privacy Act requires operators and end-users like Axon to implement specific provisions in their usage and privacy policy to protect Californians. Cal. Civ. Code

---

angeles-police-department-announced-that-it-will-deploy-axon-fleet-3-in-car-camera-systems-na23053ti/; Fremont PD, *Community Camera Project*, *supra* note 6; Pendleton, *supra* note 6.

[49] Axon Fusus Product Page, *supra* note 4.

[50] Letter from Jennifer Pinsof, Staff Att'y, Elec. Frontier Found.; Matt Cagle, Senior Staff Att'y, ACLU Found. of N. Cal.; Mohammad Tasjar, Senior Staff Att'y, ACLU Found. of S. Cal.; & David Trujillo, Chief Program & Strategy Officer, to Att'y Gen. Rob Bonta, Off. of the Att'y Gen., Cal. Dep't of Just., at 2 (Jan. 31, 2024) [hereinafter EFF–ACLU Joint Letter], https://www.eff.org/files/2024/01/30/2024-01-31_letter_to_ag_bonta_re_sb_34_final.pdf (citing *Automatic License Plate Readers*, Elec. Frontier Found. (Mar. 29, 2023), https://sls.eff.org/technologies/automated-license-plate-readers-alprs; *You Are Being Tracked: How License Plate Readers Are Being Used to Record Americans' Movements*, ACLU (July 2013), https://www.aclu.org/you-are-being-tracked).

[51] *See* Jay Stanley, *Surveillance Company Flock Now Using AI to Report Us to Police if It Thinks Our Movement Patterns Are "Suspicious"*, ACLU: News & Commentary (July 23, 2025), https://www.aclu.org/news/national-security/surveillance-company-flock-now-using-ai-to-report-us-to-police-if-it-thinks-our-movement-patterns-are-suspicious.

§ 1798.90.51(b); § 1798.90.53(b).

63. The ALPR Privacy Act requires ALPR operators to ensure that information in their ALPR system will be used exclusively for purposes authorized by their usage and privacy policy. Cal. Civ. Code § 1798.90.52(b).

64. This requirement is a primary focus of the ALPR Privacy Act. It ensures both that ALPR operators consider and make deliberate decisions on the use of sensitive ALPR information, and that individuals can know when and how their ALPR information is being collected and used. In other words, the ALPR Privacy Act grants individuals the right to know which entities are collecting their ALPR data and how it is being used and maintained.

65. Axon does not have an ALPR usage and privacy policy. Its publicly posted Global Privacy Notice claims to only apply to Axon products that display the Privacy Notice.[52] Axon's ALPR cameras do not do so. The Privacy Notice also lacks any of the specific ALPR terms required by the ALPR Privacy Act. The Privacy Policy tells readers that specific products may have their own policies and to visit that product's page; no ALPR page has one.

66. Axon's Global Privacy Notice includes an addendum for California residents that describes the rights California privacy law gives them over their personal information.[53] But that addendum excludes data processed through Axon Cloud Services.[54] The part of Axon's privacy notice written for California residents thus carves out the very data at issue: a Californian who reads the notice learns that it does not reach the ALPR data Axon processes and stores in its cloud. Axon's separate Cloud Services Privacy Notice is written for customers and never mentions license plate or ALPR data.[55]

67. Axon's webpage listing its legal notices similarly lacks an ALPR privacy policy.[56]

---

[52] *Axon Global Privacy Notice*, Axon, https://www.axon.com/legal/privacy-policy (last updated Feb. 1, 2025).

[53] *Id.*

[54] *Id.*

[55] *Axon Cloud Services Privacy Notice*, Axon, https://www.axon.com/legal/cloud-services-privacy-policy (last updated Aug. 24, 2026).

[56] *See Privacy Policy*, Axon, https://www.axon.com/legal (last visited Nov. 3, 2026).

68. Even if Axon were able to point to an ALPR privacy policy hidden somewhere on its website, the ALPR Privacy Act requires such policies to be "posted conspicuously on [an ALPR operator's] Internet Web site." Cal. Civ. Code § 1798.90.51(b)(1). Axon certainly has no conspicuously posted ALPR privacy policy.

69. Axon disavows its responsibility as an operator, insisting that its customers—not Axon—are the ones who bear the onus for obeying the law. But the burden of compliance rests not just on law enforcement agency customers but on Axon and other ALPR operators, too. The ALPR Privacy Act obligates Axon as an ALPR operator and end-user to implement a privacy policy, post it conspicuously, and ensure that the policy is followed so that the ALPR system is properly used. By failing to follow these requirements, Axon harms Californians in several ways.

70. **Axon's Lack of a Privacy Policy Fails to Respect Californians' Privacy and Civil Liberties.** California's ALPR statute requires that operators like Axon implement a privacy policy designed to "ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information" respects "individuals' privacy and civil liberties." Cal. Civ. Code § 1798.90.51(b)(1). It similarly requires end-users like Axon to implement a policy designed to "ensure that the access, use, sharing, and dissemination of ALPR information" respects "individuals' privacy and civil liberties." Cal. Civ. Code § 1798.90.53(b)(1). By failing to implement a privacy policy, Axon fails to respect individuals' privacy and civil liberties, because they are left in the dark about how their sensitive information can be used, shared, or disseminated.

71. **Authorized Purposes:** The ALPR statute requires Axon's privacy policy to describe "[t]he authorized purposes for using the ALPR system and collecting ALPR information." Cal. Civ. Code § 1798.90.51(b)(2)(A). Because Axon fails to describe the authorized purposes for using the ALPR system and collecting ALPR information, Californians cannot know what the permissible uses of ALPR information are, nor can they hold Axon or other end-users accountable for any misuse of the ALPR system.

72. **Proper Use:** Further, without implementing a policy stating the authorized purposes for the collection and use of ALPR information, Axon cannot require that the ALPR information be used only for the authorized purposes described, as required of operators under

Cal. Civ. Code § 1798.90.52(b). Axon therefore violates Subsection 52(b) every time it provides a customer with access to ALPR information without requiring it to abide by any proper use requirements.

73. **Restrictions on Who Can Access ALPR Data.** California's ALPR statute requires Axon's privacy policy to describe "the job title or other designation of the employees and independent contractors" who are authorized to use or access the system, or to collect ALPR information. Cal. Civ. Code §§ 1798.90.51(b)(2)(B), 1798.90.53(b)(2)(B). By failing to provide this information, Axon makes it impossible for Californians to know who within Axon has access to their ALPR information or for what purposes.

74. **ALPR Compliance Monitoring.** Axon's privacy policy is required to describe "how the ALPR system will be monitored to ensure . . . compliance with applicable privacy laws." Cal. Civ. Code §§1798.90.51(b)(2)(C), 1798.90.53(b)(2)(C). Axon must have its own ALPR compliance monitoring program and describe the program in its privacy policy. *See id.* Axon has not publicly adopted any compliance program or monitoring. But Axon cannot disclaim its explicit obligation under the ALPR Privacy Act.

75. **Restrictions on Sale, Sharing, or Transfer of ALPR Data.** Axon is required in its privacy policy to describe the "purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons." Cal. Civ. Code §§1798.90.51(b)(2)(D), 1798.90.53(b)(2)(D). Because Axon has not implemented a privacy policy, it is impossible for Californians to know who possesses their ALPR information or whether it is sold, shared, or transferred.

76. **Custodian of ALPR System.** Axon's privacy policy fails to state the "title of the official custodian, or owner, of the ALPR system responsible for implementing this section," as required by Cal. Civ. Code §§ 1798.90.51(b)(2)(E), 1798.90.53(b)(2)(E). Without this information, it is impossible for Californians to know who ultimately owns and is responsible for implementation of Axon's non-existent usage & privacy policy.

77. **Accuracy of ALPR Data.** Axon's privacy policy fails to describe "reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors."

Cal. Civ. Code §§ 1798.90.51(b)(2)(F), 1798.90.53(b)(2)(F). By failing to post a privacy policy, Californians cannot be certain that Axon has taken any "reasonable measures" to "ensure the accuracy of ALPR information and correct data errors," as required by the ALPR Privacy Act.

78. **Retention and Destruction of ALPR Information.** Per Cal. Civ. Code §§ 1798.90.51(b)(2)(G), 1798.90.53(b)(2)(G), Axon's policy must describe "[t]he length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information." Without a usage and privacy policy, Californians cannot know for how long their ALPR information is retained.

79. **Pass-Through Compliance**. Axon cannot rely on passing its operator duties on to its customers, as a matter of both law and fact. The ALPR Privacy Act imposes separate duties on Axon as an ALPR operator—duties distinct from those of its end users (Axon's customers). Axon has also actively chosen to set up its ALPR system so that publication of an ALPR privacy policy by an agency customer is optional, not mandatory.[57] California's ALPR law imposes a duty on Axon to ensure that its customers are complying "with applicable privacy laws." Cal. Civ. Code § 1798.90.51(b)(2)(C). Axon blatantly shirked its duties.

## VI. Axon's ALPR Data Collection and Aggregation Practices are Highly Offensive

80. Axon collects Plaintiffs' ALPR data, constantly and indiscriminately, any time their vehicles drive by one of the thousands of Axon ALPR cameras spread throughout the state of California. Across Axon's network of thousands of cameras, Plaintiffs' and the Class's location and movement are tracked throughout their lives—including on their commute, while visiting loved ones, getting food, attending protests, or going to church or healthcare appointments. In the aggregate, this data is especially sensitive; Axon can infer a person's food preferences, their health problems, their religion, their political affiliation, who they associate with and many other sensitive details of their lives.

81. Axon's practices have caused Plaintiffs to completely lose control over their ALPR data, including location, movement, and travel data.

---

[57] Axon, *Public policy and usage*, *supra* note 10.

82. Axon fails to provide Plaintiffs with a privacy policy that may inform them as to when, how, and by whom their ALPR information is collected, used, accessed, or maintained, or for what purpose. Plaintiffs cannot know what entities or actors their ALPR information has been disseminated or sold to, including their sensitive location and movement data, or for what purposes their data is disseminated or otherwise used.

83. When combined with a corresponding license plate number, this location and movement data can be easily used to identify an individual (such as in combination with DMV records). Axon also uses Plaintiffs' ALPR data to generate insights and analytics from aggregated ALPR data, third-party data, and its proprietary software, such as predicting their future locations.[58]

84. This pervasive surveillance of Plaintiffs' location and movement data, which Axon collects, aggregates, analyzes, and then disseminates to unknown parties causes Plaintiffs to feel watched in their daily lives.

85. Axon's practices are made more offensive by the ways in which ALPR data is used for discriminatory purposes, threatens access to healthcare, and chills free speech.

---

[58] *See, e.g.*, *Axon Evidence*, Axon, https://www.axon.com/products/axon-evidence (last visited Nov. 3, 2026). ("Gather critical evidence the moment it's captured, whether from Axon cameras, public submissions, or third-party systems . . . . [F]iles arrive organized, searchable, and ready for action."); Axon Fusus Product Page, *supra* note 4 ("Identify vehicles by plate, color, make or attributes and view movement history across connected ALPR sources . . . ."); *Axon & ELSAG: The Invisible Tracking Grid*, ("Axon doesn't just sell individual cameras. They sell an ecosystem. By bundling ALPR into massive master contracts that include body cameras and vehicle fleet systems, . . . Axon Fusus software turns every feed — public CCTV, business cameras, drone footage, and ALPR — into a unified Real-Time Crime Center. It is an open ecosystem that absorbs existing infrastructure, meaning the surveillance footprint expands without the need to install new, highly visible pole cameras."); Axon, *More than just plate reads*, *supra* note 1 ("**Axon Fusus**, our real-time operations platform, provides visibility and insight across **any** certified camera, not just Axon cameras. With **Axon Fusus** as the connective tissue of your ALPR data feeds, each feed becomes part of a unified intelligence layer. . . . It's not just about finding a plate. It's about connecting the dots across your entire data ecosystem . . . ."); Axon Outpost Product Page, *supra* note 20 ("Axon Fusus brings live video and plate reads from Axon Outpost together with other sensors and data to provide unified real-time insights, enabling agencies to solve crimes involving vehicles even faster.").

86. **ALPR Networks Can Amplify Discriminatory Policing Practices.** As noted by several privacy advocates and the ACLU, "police often disproportionately deploy license plate readers in communities experiencing poverty and historically overpoliced communities of color, regardless of crime rates."[59] There are numerous accounts of police relying on ALPR data to hold innocent people of color at gunpoint.[60] ALPR systems have approximately a 1 in 10 error rate, and police frequently rely on ALPR when mistaking law-abiding citizens for car thieves, particularly for people of color.[61] Improper sharing of ALPR data increases the risk to the lives of everyday people.

87. **Threats to Access to Abortion and Gender-Affirming Care.** The weaponization of ALPR data also threatens individuals seeking constitutionally protected healthcare in California. Location information from California-based ALPR cameras can be used by agencies in restrictive states to monitor clinics, track vehicles, and surveil the movements of patients and providers.[62] An ALPR database has indeed been used to track a woman across state lines who had

---

[59] EFF–ACLU Joint Letter, *supra* note 50, at 2 (citing Dave Maass & Jeremy Gillula, *What You Can Learn from Oakland's Raw ALPR Data*, Elec. Frontier Found. (Jan. 21, 2015), https://www.eff.org/deeplinks/2015/01/what-we-learned-oakland-raw-alpr-data; Barton Gellman & Sam Adler-Bell, *The Disparate Impact of Surveillance*, Century Found. (Dec. 21, 2017), https://production-tcf.imgix.net/app/uploads/2017/12/03151009/the-disparate-impact-of-surveillance.pdf); *see also, e.g.*, Kaveh Waddell, *How License-Plate Readers Have Helped Police and Lenders Target the Poor*, The Atlantic (Apr. 22, 2016), https://www.theatlantic.com/technology/archive/2016/04/how-license-plate-readers-have-helped-police-and-lenders-target-the-poor/479436 (summarizing data indicating that Oakland Police Department deployed ALPRs disproportionately, often in low-income areas and in neighborhoods with high concentrations of African-American and Latino residents).

[60] Gowri Nayar, *The Human Toll of ALPR Errors*, Elec. Frontier Found. (Nov. 1, 2024), https://www.eff.org/deeplinks/2024/11/human-toll-alpr-errors.

[61] *Id.*

[62] *See, e.g.*, Caroline Kitchener & Devlin Barrett, *Antiabortion lawmakers want to block patients from crossing state lines*, Wash. Post (June 29, 2022, at 18:17 ET), https://www.washingtonpost.com/politics/2022/06/29/abortion-state-lines (last updated June 30, 2022, at 8:30 ET); *Idaho governor signs 'abortion trafficking' bill into law*, AP News (Apr. 6, 2023), https://apnews.com/article/idaho-abortion-minors-criminalization-b8fb4b6feb9b520d63f75432a1219588; Josh Moon, *Alabama AG: state may prosecute those who assist in out-of-state abortions*, Ala. Pol. Rep. (Sept. 15, 2022, at 6:30 CT), https://www.alreporter.com/2022/09/15/alabama-ag-state-may-prosecute-those-who-assist-in-out-of-state-abortions.

self-administered an abortion.[63]

88. Given that multiple states have moved to criminalize obtaining or facilitating out-of-state abortions, sharing Axon data with their law enforcement agencies threatens anyone involved in abortion care within California.[64] Parallel efforts to criminalize out-of-state travel for gender-affirming care expose another vulnerable population to the same risks.

89. **Threats to Protected First Amendment Activity**. ALPR data can and has also been used to track individuals in association with constitutionally protected activity. "Aggregated location data allows law enforcement and private companies to create detailed profiles of a person's daily life. When considered in bulk, ALPR data can form an intimate picture of a driver's activities and even deter First Amendment–protected activities. This kind of targeted tracking threatens to erode fundamental freedoms of speech."[65] Law enforcement has indeed used ALPR data to track individuals exercising their First Amendment rights, including engaging in peaceful

---

[63] Joseph Cox & Jason Koebler, *A Texas Cop Searched License Plate Cameras Nationwide for a Woman Who Got an Abortion*, 404 Media (May 29, 2025), https://www.404media.co/a-texas-cop-searched-license-plate-cameras-nationwide-for-a-woman-who-got-an-abortion. Flock and the Johnson County, Texas, Sheriff initially insisted that the search was not "related to enforcing Texas's abortion ban" and that "media accounts" were "'false,' 'misleading,' and 'clickbait.'" These claims were proven false. *See* Dave Maass & Rindala Alajaji, *Flock Safety and Texas Sheriff Claimed License Plate Search Was for a Missing Person. It Was an Abortion Investigation.*, Elec. Frontier Found. (Oct. 7, 2025), https://www.eff.org/deeplinks/2025/10/flock-safety-and-texas-sheriff-claimed-license-plate-search-was-missing-person-it ("New documents and court records obtained by EFF show that Texas deputies queried Flock Safety's surveillance data in an abortion investigation. The new information shows that deputies had initiated a 'death investigation' of a 'non-viable fetus,' logged evidence of a woman's self-managed abortion, and consulted prosecutors about possibly charging her."); Jason Koebler & Joseph Cox, *Police Said They Surveilled Woman Who Had an Abortion for Her 'Safety.' Court Records Show They Considered Charging Her with a Crime*, 404 Media (Oct. 7, 2025), https://www.404media.co/police-said-they-surveilled-woman-who-had-an-abortion-for-her-safety-court-records-show-they-considered-charging-her-with-a-crime/.

[64] Dave Maass, *Automated License Plate Readers Threaten Abortion Access. Here's How Policymakers Can Mitigate the Risk*, Elec. Frontier Found. (Sept. 28, 2022), https://www.eff.org/deeplinks/2022/09/automated-license-plate-readers-threaten-abortion-access-heres-how-policymakers.

[65] SB274 Analysis, Cal. State Assembly Comm. on Priv. & Consumer Prot., https://apcp.assembly.ca.gov/system/files/2025-07/sb-274-cervantes-apcp-analysis.pdf, at 4 (last visited Feb. 3, 2026).

protest.[66]

90. **ALPR Networks Facilitate Stalking.** The Institute for Justice has identified at least 75 reported incidents of law enforcement personnel allegedly using license plate readers to track romantic partners, exes, or strangers.[67] Male officers have followed women who "unwittingly caught their eye in public" to their homes.[68] Another male officer used ALPR information to track down a domestic violence victim and give her location to her alleged abuser (the officer's cousin).[69]

91. Because no warrant is required to search an ALPR system, any officer can enter a fake "reason" for the license plate search, gaining access to a person's detailed location history and driving patterns. Audits of other ALPR systems show officers entering search reasons like "LOL," "LMAO," "sexy," and "idk."[70]

92. The use and sharing of ALPR data for discriminatory purposes and to threaten access to healthcare, track those engaging in protected First Amendment activity, and stalk romantic interests heightens the highly offensive nature of the widespread collection, storage, use, and sharing of ALPR data. This makes the public disclosure of the ALPR usage and privacy policy required by the ALPR Privacy Act all the more important. Without said policy, Californians cannot know how their data is being collected, with whom it is shared or by whom it is accessed, and for what purposes.

---

[66] Dave Maass & Rindala Alajaji, *How Cops Are Using Flock Safety's ALPR Network to Surveil Protesters and Activists*, Elec. Frontier Found. (Nov. 20, 2025), https://www.eff.org/deeplinks/2025/11/how-cops-are-using-flock-safetys-alpr-network-surveil-protesters-and-activists.

[67] Christopher Ingraham, *Police Have Reportedly Used License Plate Readers to Stalk Romantic Interests Dozens of Times in Recent Years*, Inst. for Just. (Apr. 27, 2026, updated Sept. 3, 2026), https://ij.org/police-have-reportedly-used-license-plate-readers-to-stalk-romantic-interests-at-least-14-times-in-recent-years/.

[68] *Id.*

[69] Joanna Putman, *Calif. Officer Fired for Giving ALPR Location Data to Domestic Violence Suspect*, Police1 (Sept. 15, 2026), https://www.police1.com/officer-misconduct-internal-affairs/calif-officer-fired-for-giving-alpr-location-data-to-domestic-violence-suspect.

[70] Rindala Alajaji & Dave Maass, *The High Crime of "LMAO": How Cops Are Treating Flock's Mass Surveillance as a Joke*, Elec. Frontier Found. (Sept. 14, 2026), https://www.eff.org/deeplinks/2026/09/high-crime-lmao-how-cops-are-treating-mass-surveillance-joke.

## PLAINTIFFS' EXPERIENCES

### I. Plaintiff Mun's Experience

93. Plaintiff Ryan Scott Mun is a resident of Daly City in San Mateo County, California.

94. Plaintiff Mun owns a car registered in the state of California and regularly drives in California, including in the Daly City area for day-to-day activities. This includes driving along routes where Axon's fixed ALPR cameras are installed.

95. Because Axon's ALPR cameras scan and collect the information of every car passing by, Plaintiff Mun's license plate, vehicle, travel direction, and location data has been and continues to be collected, stored, aggregated, and disseminated by Axon.

96. Axon's ALPR cameras are situated such that Plaintiff Mun cannot drive for his regular activities without passing a camera. If Plaintiff Mun could easily avoid routes where Axon's ALPR cameras are installed, he would, but he cannot.

97. The location data collected by Axon from its sprawling fleet of cameras also allows those with access to Axon's systems to ascertain Plaintiff Mun's movements.

98. Plaintiff Mun has been harmed by Axon's violation of his right to know when, how, and by whom his ALPR information is being collected, used, accessed, and maintained. Because Axon does not maintain an ALPR usage and privacy policy, Plaintiff Mun does not know the full circumstances under which his information is or will be shared and with whom his information is or will be shared.

99. Plaintiff Mun has been harmed by Axon's violation of his right to correct. Axon maintains no protocol for Plaintiff Mun to correct information about himself or his vehicle so that if his vehicle incorrectly appears on a "Hot List," he will not be immediately detained and potentially held at gunpoint by law enforcement due to mistaken identity.

100. Plaintiff Mun finds Axon's continuous collection, aggregation, and sharing of his vehicle and location data highly offensive.

101. Plaintiff Mun believes that Axon's widespread surveillance of his vehicle and location information encroaches on his right to privacy and harms his personal freedom and

autonomy. Knowing that Axon's cameras collect, store, and share data on his everyday movements, including with unknown entities, makes Plaintiff Mun feel monitored in his daily life.

102. Axon's tracking of Plaintiff Mun's driving patterns enables any authorized user of Axon's systems to generate a comprehensive, intimate portrait of his daily life, including when he leaves home, the activities he participates in, and the communities in which he travels.

## II. <u>Plaintiff Phan's Experience</u>

103. Plaintiff Felix Phan is a resident of Palm Desert in Riverside County, California.

104. Plaintiff Phan owns a car registered in the state of California and regularly drives in California, including in the Palm Desert area for day-to-day activities. This includes driving along routes where Axon's fixed ALPR cameras are installed.

105. Because Axon's ALPR cameras scan and collect the information of every car passing by, Plaintiff Phan's license plate, vehicle, travel direction, and location data has been and continues to be collected, stored, aggregated, and disseminated by Axon.

106. The location data collected by Axon from its sprawling fleet of cameras also allows those with access to Axon's systems to ascertain Plaintiff Phan's movements.

107. Plaintiff Phan has been harmed by Axon's violation of his right to know when, how, and by whom his ALPR information is being collected, used, accessed, and maintained. Because Axon does not maintain an ALPR usage and privacy policy, Plaintiff Phan does not know the full circumstances under which his information is or will be shared and with whom his information is or will be shared.

108. Plaintiff Phan has been harmed by Axon's violation of his right to correct. Axon maintains no protocol for Plaintiff Phan to correct information about himself or his vehicle so that if his vehicle incorrectly appears on a "Hot List," he will not be immediately detained and potentially held at gunpoint by law enforcement due to mistaken identity.

109. Plaintiff Phan finds Axon's continuous collection, aggregation, and sharing of his vehicle and location data highly offensive.

110. Plaintiff Phan believes that Axon's widespread surveillance of his vehicle and location information encroaches on his right to privacy and harms his personal freedom and

autonomy. Knowing that Axon's cameras collect, store, and share data on his everyday movements, including with unknown entities, makes Plaintiff Phan feel monitored in his daily life.

111. Axon's tracking of Plaintiff Phan's driving patterns enables any authorized user of Axon's systems to generate a comprehensive, intimate portrait of his daily life, including when he leaves home, the activities he participates in, and the communities in which he travels.

## CLASS ACTION ALLEGATIONS

112. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek certification of the following class:

> All individuals whose ALPR information was collected in California and processed or stored by Axon's ALPR system from November 3, 2023, to the present (the "Class Period").

113. The Class is defined by reference to objective, verifiable criteria: whether an individual's ALPR information was collected in California and whether that ALPR information was processed or stored by Axon's ALPR system during the class period. This data is ascertainable through Axon's own business records without individualized inquiry.

114. Excluded from the Class are Axon, its agents, affiliates, parents, subsidiaries, any entity in which Axon has a controlling interest, any Axon officer or director; any Judge who adjudicates this case, including their staff and immediate family; persons who properly execute and file a timely request for exclusion from the Class; persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; Plaintiffs' counsel and Axon's counsel; and the legal representatives, successors, and assigns of any such excluded person.

115. Plaintiffs reserve the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

116. Ascertainability. Members of the Class ("Class Members") are ascertainable because the definition allows proposed class members to identify themselves as having a right to recover, and provides an objective, concrete basis for which to determine who will be bound by a judgment.

117. Numerosity. The Class Members are so numerous that joinder of all members is impracticable. There are millions of drivers throughout California whose ALPR data was collected by Axon while it failed to comply with the ALPR Privacy Act and failed to respect individuals' privacy. Because of the sophisticated nature and detailed, ongoing collection, Axon will be able to identify all these individuals through its amassed records.

118. Commonality & Predominance. Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

(a) Whether Axon implemented and maintained a usage and privacy policy that complies with California's ALPR Privacy Act;

(b) Whether Axon complies with the Notice, Privacy, and Proper-Use Requirements set forth in California's ALPR Privacy Act;

(c) Whether Axon's conduct violates Article I, Section 1 of the California Constitution;

(d) Whether Axon's conduct intruded upon the Class Members' seclusion;

(e) Whether Axon gathered location data and license plate scans of Class Members;

(f) Whether Axon knowingly and willfully violated the ALPR Privacy Act;

(g) Whether Axon's failure to have an adequate usage and privacy policy has harmed the Class;

(h) Whether Axon's highly offensive, intentional intrusion upon the reasonably expected privacy of the Class has harmed the Class;

(i) Whether Axon is subject to punitive damages under California's ALPR Privacy Act and the California Constitution.

119. The questions of law and fact common to the Class identified above predominate over any questions affecting only individual Class Members. Fed. R. Civ. P. 23(b)(3). Predominance is satisfied here for several independent reasons.

120. First, Axon's liability turns entirely on its own centralized, uniform conduct, not on anything individual to any particular Class Member. Every Class Member's claim rests on the same predicate: Axon designed, deployed, and operated a single, uniform ALPR system which

indiscriminately collects, processes, and stores ALPR information without implementing a usage and privacy policy and intentionally tracked every Class Member's movements. Whether this conduct violates the ALPR Privacy Act and the California Constitution is a question of law applicable uniformly to each member of the Class. No individualized inquiry into any Class Member's circumstances is necessary to adjudicate the central liability question.

121. Second, the ALPR Privacy Act provides for statutory liquidated damages of $2,500 per violation, *without* requiring proof of actual damages. Cal. Civ. Code § 1798.90.54. Courts in this Circuit have consistently held that, where a statute imposes a uniform liquidated damages floor, damages do not create predominance problems because no individualized damages inquiry is required. Class Members need only establish that they fall within the class definition—a determination made on Axon's own ALPR data records—to establish entitlement to the minimum statutory recovery.

122. Third, the common questions identified above are each susceptible to class-wide proof. For example, the question of whether Axon maintained and publicly posted a compliant usage and privacy policy can be answered by examining Axon's policy documents and website, the same evidence as to every Class Member. The question of whether Axon's conduct was a knowing violation is likewise a class-wide issue resolved by examining Axon's uniform policies, training materials, and internal communications, not by examining any individual Class Member's conduct.

123. The question of whether Axon's conduct violates the California Constitution can be answered by examining whether Californians in general have a reasonable expectation of privacy in their movements and whether Axon's intrusion upon such was highly offensive to a reasonable person. These questions are answered once for the entire Class, not by examining any individual Class Member's conduct.

124. Fourth, any individual issues that may exist, such as the precise number of scans of a given Class Member's license plate, are manageable and do not predominate. Such questions go to the quantum of damages, not to liability, and can be resolved through Axon's own database records without mini-trials.

125. Typicality. Plaintiffs' claims are typical of those of other Class Members because all were harmed by Axon's failure to maintain and publicly post the statutorily required usage and privacy policy, and all had and continue to have their privacy intentionally and offensively intruded upon by Axon.

126. Adequacy. Plaintiffs will fairly and adequately represent and protect the interests of Class Members in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to Members of the Class and the infringement of the rights, and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

127. Superiority. Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that thousands of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a large corporation like Axon. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

128. Policies Generally Applicable to the Class. This class action is also appropriate for certification because Axon has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Axon's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Axon's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

129. Unless a class-wide injunction is issued, Axon will continue collecting and retaining Class Member ALPR data, and Axon may continue to act unlawfully as set forth in this Complaint.

130. Further, Axon has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief as to Class Members as a whole is appropriate.

131. Issue Certification. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

132. Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and/or the discovery process.

## COUNT I: VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT: FAILURE TO IMPLEMENT A USAGE AND PRIVACY POLICY

**Cal. Civ. Code §§1798.90.5 *et seq.***

**(On behalf of Plaintiffs and the Class)**

133. Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class.

134. Axon is both an ALPR operator under Cal. Civ. Code § 1798.90.5(c) and an ALPR end-user under Cal. Civ. Code § 1798.90.5(a) because it operates an ALPR system and accesses or uses an ALPR system.

135. As such, Axon must comply with Cal. Civ. Code §§ 1798.90.51(b) and 1798.90.53(b), which require Axon to implement an ALPR usage and privacy policy containing the following specific provisions:

(A) The authorized purposes for using the ALPR system and collecting ALPR information.

(B) A description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system, or to collect ALPR information. The policy shall identify the training

requirements necessary for those authorized employees and independent contractors.

(C) A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws.[71]

(D) The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.

(E) The title of the official custodian, or owner, of the ALPR system responsible for implementing this section.

(F) A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.

(G) The length of time ALPR information will be retained, and the process the ALPR operator [or end-user] will utilize to determine if and when to destroy retained ALPR information.

*Id.* §§ 1798.90.51(b), 1798.90.53(b).

136. Axon does not implement or maintain an ALPR usage and privacy policy.

137. Cal. Civ. Code §§ 1798.90.51(b)(1) and 1798.90.53(b)(1) require operators and end users respectively to have their usage and privacy policy "posted conspicuously" on their website.

138. Axon does not have an ALPR usage and privacy policy posted on its website.

139. Axon's failure to implement and conspicuously post a compliant ALPR usage and privacy policy constitutes a knowing, willful and reckless disregard for California law and resident privacy. Its conduct has directly harmed Plaintiffs and the Class by violating their right to know when, how, and by whom their ALPR information is collected, used, accessed, and maintained.

---

[71] Cal. Civ. Code § 1798.90.53(b)(2)(C) requires end-users to include "[a] description of how the ALPR system will be monitored to ensure the security of the information **accessed or used**, and compliance with all applicable privacy laws **and a process for periodic system audits**." (emphasis added).

140. Axon's conduct was at all relevant times in knowing, willful and in reckless disregard of California's ALPR Privacy Act.

141. Plaintiffs seek actual or liquidated damages of not less than $2,500 per violation, punitive damages, and any other preliminary and equitable relief the Court deems to be appropriate.

## COUNT II: INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION

**Cal. Const. art. I, § 1**

**(On behalf of Plaintiffs and the Class)**

142. Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class.

143. Plaintiffs and Class Members have an interest in: (i) conducting lawful personal and political activities without surveillance, intrusion, or interference, including, but not limited to, the right to move from place to place without being subjected to highly intrusive and surreptitious surveillance and tracking; (ii) not having detailed profiles about their vehicle and movements generated and logged over a period of weeks, months, or years that third parties may use to determine their location and/or predict future movements; (iii) precluding the dissemination, use, or abuse of the aforementioned information, including the fusing of this information with any other third-party data sets about Plaintiffs and Class Members; and (iv) controlling the dissemination of sensitive information about themselves, including their right to exclude others from their location and travel information.

144. By conducting widespread and round-the-clock surveillance of Plaintiffs' and Class Members' movements using its ALPR technology, Axon intentionally invaded Plaintiffs' and Class Members' constitutional privacy rights.

145. The right to privacy protects not only discrete pieces of information individually but the reasonable expectations of the populace regarding the systematic aggregation and use of information about their activities.

146. The aggregation of location data which captures one's movements over time violates Plaintiffs' and the populace's reasonable expectations of privacy.

147. Axon does not merely capture a license plate at a moment in time, it constructs a mosaic of each vehicle's movements, cross-references those movements against state and law enforcement databases, and makes that mosaic available for search and analysis in a database.

148. By aggregating and analyzing Plaintiffs' and Class Members' vehicle characteristics and movements over extended periods of time using its proprietary software, Axon intentionally invaded Plaintiffs' and Class Members' privacy rights.

149. By developing and deploying proprietary software capable of not just reading and logging a license plate number but creating detailed profiles of vehicles and location and movement histories, Axon intentionally invaded Plaintiffs' and Class Members' privacy rights.

150. By developing and deploying proprietary software that allows Axon to share the aforementioned information about Plaintiffs and Class Members with any of Axon's customers across California and the United States, Axon intentionally invaded Plaintiffs' and Class Members' privacy rights.

151. By developing and deploying technology that allows Axon to merge the aforementioned data about Plaintiffs and Class Members with data from external sources, Axon intentionally invaded Plaintiffs' and Class Members' privacy rights.

152. Plaintiffs and Class Members do not expect that their daily travels would be recorded or that this information would be used to generate detailed vehicle profiles about themselves and their movements, let alone profiles that local and out-of-state law enforcement agencies and private entities may easily search, access, and act on.

153. The conduct described herein is highly offensive to a reasonable person and constitutes an egregious breach of social norms.

154. Plaintiffs and Class Members did not and could not authorize Axon to intercept data on their driving activities.

155. By engaging in the aforementioned actions, Axon intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution.

156. As a result of Axon's actions, Plaintiffs and Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

157. Plaintiffs and Class Members have been damaged as a direct and proximate result of Axon's invasion of their privacy and are entitled to just compensation, including monetary damages.

158. Plaintiffs and Class Members seek appropriate relief for this injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests.

159. Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Axon's actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights.

160. Such damages are needed to deter Axon from engaging in such conduct in the future.

161. Plaintiffs and Class Members also seek such other relief as the Court may deem just and proper.

**COUNT III: INTRUSION UPON SECLUSION**

**(On behalf of Plaintiffs and the Class)**

162. Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class.

163. Plaintiffs and Class Members have an interest in: (i) conducting lawful personal and political activities without surveillance, intrusion, or interference, including, but not limited to, the right to move from place to place without being subjected to highly intrusive and surreptitious surveillance and tracking; (ii) not having detailed profiles about their vehicle and movements generated and logged over a period of weeks, months, or years that third parties may use to determine their location and/or predict future movements; (iii) precluding the dissemination, use, or abuse of the aforementioned information, including the fusing of this information with any other third-party data sets about Plaintiffs and Class Members; and (iv) controlling the dissemination of sensitive information about themselves, including their right to exclude others from their location and travel information.

164. By conducting widespread and round-the-clock surveillance of Plaintiffs' and Class Members' movements using its ALPR technology, Axon intentionally invaded Plaintiffs' and Class Members' privacy rights, as well as intruded upon Plaintiffs' and Class Members' seclusion.

165. The right to privacy protects not only discrete pieces of information individually but the reasonable expectations of the populace regarding the systematic aggregation and use of information about their activities.

166. The aggregation of location data which captures one's movements over time violates Plaintiffs' and the populace's reasonable expectations of privacy.

167. Axon does not merely capture a license plate at a moment in time, it constructs a mosaic of each vehicle's movements, cross-references those movements against state and law enforcement databases, and makes that mosaic available for search and analysis in a database.

168. By aggregating and analyzing Plaintiffs' and Class Members' vehicle characteristics and movements over extended periods of time using its proprietary software, Axon intentionally invaded Plaintiffs' and Class Members' privacy rights, as well as intruded upon Plaintiffs' and Class Members' seclusion.

169. By developing and deploying proprietary software capable of not just reading and logging a license plate number but creating detailed profiles of vehicles and location and movement histories, Axon intentionally invaded Plaintiffs' and Class Members' privacy rights and intruded upon their seclusion.

170. By developing and deploying proprietary software that allows Axon to share the aforementioned information about Plaintiffs and Class Members with any of Axon's customers across California and the United States, Axon intentionally invaded Plaintiffs' and Class Members' privacy rights and intruded upon their seclusion.

171. By developing and deploying technology that allows Axon to merge the aforementioned data about Plaintiffs and Class Members with data from external sources, Axon intentionally invaded Plaintiffs' and Class Members' privacy rights and intruded upon their seclusion.

172. Plaintiffs and Class Members do not expect that their daily travels would be recorded or that this information would be used to generate detailed vehicle profiles about themselves and their movements, let alone profiles that local and out-of-state law enforcement agencies and private entities may easily search, access, and act on.

173. The conduct described herein is highly offensive to a reasonable person and constitutes an egregious breach of social norms.

174. Plaintiffs and Class Members did not and could not authorize Axon to intercept data on their driving activities.

175. By engaging in the aforementioned actions, Axon intentionally invaded Plaintiffs' and Class Members' privacy and intruded upon their seclusion.

176. As a result of Axon's actions, Plaintiffs and Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

177. Plaintiffs and Class Members have been damaged as a direct and proximate result of Axon's invasion of their privacy and are entitled to just compensation, including monetary damages.

178. Plaintiffs and Class Members seek appropriate relief for this injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests.

179. Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Axon's actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights.

180. Such damages are needed to deter Axon from engaging in such conduct in the future.

181. Plaintiffs and Class Members also seek such other relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that the Court grant the following relief:

a. Certification of this action as a class action and appointment of Plaintiffs and Plaintiffs' counsel to represent the Class;

b. A declaratory judgement that Axon violated Cal. Civ. Code §§1798.90.5 *et seq.*;

c. An order enjoining Axon from engaging in or facilitating the unlawful practices and illegal acts described herein;

d. An order awarding Plaintiffs and the Class: (1) actual or liquidated damages (whichever is higher); (2) punitive damages—as warranted—in an amount to be determined at trial; (3) injunctive relief as the Court may deem proper; (4) reasonable attorneys' fees and expenses and costs of suit pursuant to Cal. Code of Civil Procedure § 1021.5 and/or other applicable law; (5) pre-judgment and post-judgment interest as provided by law; and (6) such other and further relief as the Court may deem appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of the proposed Class, request a trial by jury of all claims that can be so tried.

Dated: November 3, 2026


By: *Steven M. Nathan*

David M. Berger (SBN 277526)
Aaron Blumenthal (SBN 310605)
Kate Walford (SBN 362658)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Fax: (510) 350-9701
dmb@classlawgroup.com
ab@classlawgroup.com
kgw@classlawgroup.com

Renner K. Walker (SBN 295889)
Steven M. Nathan (SBN 153250)
Gisela (Zelly) Rosa*
Jacob R Leiken*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
rwalker@hausfeld.com
snathan@hausfeld.com
zrosa@hausfeld.com
jleiken@hausfeld.com

Ida Abhari (SBN 346569)
**HAUSFELD LLP**
580 California Street, 12th Floor
San Francisco, CA 94104
iabhari@hausfeld.com

***pro hac vice forthcoming***
***Attorneys for Plaintiffs***